UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DIANA NORTON, )<br>    Plaintiff )<br> )<br>v. )<br> )<br>RIVERSIDE MOTORCARS, LLC, CHRISTIAN )<br>JAMES SALINARDI, JOHN DOE #1, )<br>JOHN DOE #2, JOHN DOE #3, )<br>JOHN DOE #4, AND JOHN DOE #5 )<br>    Defendants )<br>_____) | CIVIL ACTION NO.<br><br><br>JURY TRIAL DEMANDED<br><br><br><br><br><br>JULY 31, 2015 |

## COMPLAINT

### I. INTRODUCTION

1. This is a suit brought by a consumer who has been assaulted, harassed, and abused by the defendants. She claims for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*, and also pendent State law claims for intentional infliction of emotional distress, conversion, and for violations of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §§ 42-110a *et seq.*, the Connecticut Retail Installment Sales Financing Act ("RISFA"), Conn. Gen. Stat. 36a-770 *et seq.*, Article 9 of the Connecticut Uniform Commercial Code ("UCC"), Conn. Gen. Stat. §§ 42a-9-101 *et seq.,* and Connecticut Creditors Collection Practices Act ("CCPA"), Conn. Gen. Stat. §§ 36a-645 *et seq.*

### II. PARTIES

2. Plaintiff Diana Norton ("Norton") is a natural person residing in Naugatuck, Connecticut and is a "consumer" as defined by FDCPA 15 U.S.C. §1692a(3) and a "consumer debtor" as defined by CCPA § 36a-645(1).

3. Defendant Riverside Motorcars, LLC ("Riverside") is a Connecticut limited liability company that operates a used car dealership in Naugatuck, Connecticut.

4. Defendant Christian James Salinardi ("Salinardi") is a member of Riverside and is actively involved in the management and day to day operations of the company.

5. John Doe #1 ("JD 1") is a natural person, corporation, partnership, or limited liability company engaged in the repossession of motor vehicles.

6. John Doe #2 ("JD 2"), John Doe #3 ("JD 3") and John Doe #4 ("JD 4"), are natural persons believed to reside in Connecticut, and they are principals or employees of JD 1.

7. John Doe #5 ("JD 5") is a natural person, corporation, partnership, or limited liability company engaged in the repossession of motor vehicles.

### III. JURISDICTION

8. Jurisdiction in this Court is proper pursuant to 15 U.S.C. § 1692k(d), 28 U.S.C. §§ 1331, 1367, and 1337, and Fed. R. Civ. P. 18(a).

9. This Court has jurisdiction over the defendants because they are located in or regularly do business in this state.

10. Venue in this Court is proper, because all or most of the parties reside or are located in Connecticut and the acts complained of occurred in this state.

### IV. FACTUAL ALLEGATIONS

**A. Allegations Regarding First Repossession Attempt**

11. On or about October 20, 2013, Norton purchased a 2006 Honda Civic (the "Vehicle") from Riverside pursuant to a Purchase Order for the cash price of $10,950.

12. Norton paid cash for the Vehicle and did not finance any portion of the purchase price.

13. At the time of purchase, Salinardi offered Norton a service contract for the Vehicle, but Norton declined the service contract.

14. Salinardi told Norton that she was required to purchase a service contract in order to buy the Vehicle.

15. Norton did not have additional funds available to pay for the service contract, and Salinardi agreed to permit her to pay the cost of the service contract over time.

16. Norton did not sign any promissory note for the service contract, and she did not provide any security interest in the Vehicle to Riverside.

17. After accepting delivery of the Vehicle, Norton repeatedly contacted Riverside to ask for the title to the Vehicle, which she had not received.

18. Joseph Salinardi, Salinardi's father and an employee at Riverside, told Norton that Riverside would not give her the title to the Vehicle, because she still owed money for the service contract.

19. During the period of June 18, 2014 to April 13, 2015, Norton made twenty (20) payments totaling $3,500 to Riverside for the service contract.

20. On April 13, 2015, when Norton made her last payment, Joseph Salinardi told her that it was the final payment and that she had paid for the service contract in full.

21. On May 27, 2015, JD 2, JD 3 and JD 4 drove up in a vehicle and parked behind Norton's Vehicle, which had been driven there by Norton's brother and his girlfriend.

22. JD 2, JD 3, and JD 4 exited their vehicle and approached Norton and told Norton that they were there to take her Vehicle.

23. Norton told JD 2, JD 3 and JD 4 that they could not take the Vehicle because she owned the Vehicle.

24. JD 2, JD 3 and JD 4 began to yell at Norton in a loud, abusive and offensive manner, using abusive language, and telling Norton to step away from the Vehicle because they were going to take the Vehicle.

25. Norton's brother and her sister-in-law were sitting in the Vehicle and refused to get out.

26. Norton instructed her sister-in-law to back-up the Vehicle while one of the John Doe defendants continued to yell at Norton in a loud, abusive and offensive manner.

27. JD 2 attempted to physically block the progress of the Vehicle, and Norton went to stop him.

28. JD 2 kicked Norton.

29. While Norton's sister-in-law was backing up the Vehicle, JD 3 threatened to spray her with mace.

30. Fearing for their safety, Norton's sister-in-law and brother exited the Vehicle.

31. Norton entered the Vehicle and began to drive away.

32. While Norton was attempting to back out of the parking spot, JD 3 sprayed her with mace or a similar spray through the driver's side window.

33. Norton proceeded to drive away, and JD 3 sprayed the mace or similar spray through the open passenger side window, hitting Norton again.

34. The John Doe defendants' tone and conduct frightened Norton, and Norton feared that she was being carjacked and she feared physical assault and bodily injury.

35. Norton drove the Vehicle a short distance, barely able to see due to the spray that went into her eyes, and pulled into a nearby parking lot.

36. Norton was frightened and concerned, because the mace or similar spray was burning her eyes and skin.

37. As a result of the aforementioned activities of Riverside and JD 1, JD 2, JD 3, and JD 4, Norton has suffered extreme emotional distress, embarrassment, humiliation and shame.

38. The mace or similar spray caused red blotches that remain on her face two months after the incident, and Norton still has problems with her eyes.

39. On June 4, 2015, Plaintiff, through her attorney, sent a letter to Riverside by facsimile requesting that it provide Norton with a copy of any retail installment agreement or other security agreement signed by Norton granting Riverside a security interest in the Vehicle, and also requesting a written statement of the dates and amounts of payments made and the total amount paid by Norton.

40. Riverside did not respond to that request prior to July 9, 2015.

**B. Allegations Regarding Repossession on July 9, 2015**

41. On July 9, 2015, Norton saw JD 5 or an individual employed by JD 5, who was in the process of hooking her Vehicle up to a tow truck.

42. Norton approached the individual and protested his taking of the Vehicle, and she provided him with a copy of her attorney's letter dated June 4, 2015 referenced above.

43. JD 5 showed Norton an order for repossession of the Vehicle from Riverside.

44. JD 5 took possession of the Vehicle, notwithstanding that Norton protested the repossession and the Vehicle could not be taken without a breach of peace.

45. On July 10, 2015, Plaintiff, through her attorney, sent a second letter by facsimile to Riverside referencing the June 4 letter and requesting that it advise the amount that Norton would be required to pay to retake possession of the Vehicle.

46. On July 10, 2015, Riverside faxed an unsigned reply stating, "She needs to pay the loan balance of $2,375, plus repossession expenses."

47. On July 13, 2015, the undersigned counsel sent a second letter to Riverside again requesting that Riverside provide an itemization showing how the loan balance was calculated and requesting the amount of repossession fees.

48. Riverside did not respond to the July 13 request.

49. Plaintiff has been without possession of her Vehicle since July 9, and Riverside has refused to provide any verification of the amounts that it claims to be owed, has not provided any documentation supporting its claim of a right to

repossession, and has not provided a definitive statement of the amount that Norton must pay to retake possession of the Vehicle.

## V.  CAUSES OF ACTION

**FIRST REPOSSESSION ATTEMPT**

### A.  FAIR DEBT COLLECTION PRACTICES ACT
### (JD 1, JD 2, JD 3, JD 4)

50.     JD 1, JD 2, JD 3 and JD 4's conduct, as described above, violated the FDCPA § 1692f(6), in that they continued with a repossession attempt after it became apparent that the Vehicle could not be taken without breach of peace, and they breached the peace in attempting to repossess the Vehicle.

51.     JD 1, JD 2, JD 3 and JD 4 are liable to Norton pursuant to the FDCPA for actual damages, including damages for personal injury and emotional distress, plus additional damages of up to $1,000.

### B.  ASSAULT
### (JD 1, JD 2, JD 3)

52.     Through his actions as described above, JD 2 committed assault on Norton by kicking her.

53.     Through his actions as described above, JD 3 committed assault on Norton by spraying her with mace or a similar substance.

54.     Plaintiff believes and therefore alleges that JD 2 was supervising and/or leading the repossession attempt, that JD 3 was acting within the scope of employment with JD 1 and under the supervision of JD 2 and, as such, JD 1 and JD 2 are liable for JD 3's actions.

55. JD 2 and JD 3 were acting within their scope of employment with JD 1 and, as such, JD 1 is liable for JD 2 and JD 3's actions.

56. Plaintiff has suffered physical injury and emotional distress as a consequence of the assault committed by JD 3. Specifically, Plaintiff suffered burning to her eyes and skin, and has red blotches on her face; she suffered extreme emotional distress, embarrassment, humiliation and shame. Plaintiff continues to have problems with her eyes.

57. Plaintiff is entitled to nominal damages and common law punitive damages for the assault committed by JD 2 and actual damages and common law punitive damages for the assault committed by JD 3.

### C. CONNECTICUT UNFAIR TRADE PRACTICES ACT
### (JD 1, JD 2, JD 3, JD 4)

58. The conduct of JD 1, JD 2, JD 3 and JD 4 was unfair and deceptive and in violation of CUTPA.

59. As a result of the conduct of JD 1, JD 2, JD 3 and JD 4, Norton suffered ascertainable losses including, but not limited to, injuries and emotional distress, and has incurred medical expenses.

60. For their violations of the CUTPA, JD 1, JD 2, JD 3 and JD 4 are liable to Plaintiff for her actual damages, punitive damages, and attorney's fees and costs.

### D. CONNECTICUT CREDITORS COLLECTION PRACTICES ACT
### (RIVERSIDE)

61. Riverside engaged in an abusive, harassing, and deceptive manner in an attempt to collect the claimed debt in violation of the CCPA § 36a-646.

62. Riverside further violated the CCPA by making false statements to Norton that the debt was paid in full and then in attempting to repossess the Vehicle.

63. For Riverside's violations of the CCPA, Norton seeks her actual damages, statutory damages, and attorney's fees and costs pursuant to Conn. Gen. Stat. § 36a-648.

### E. NEGLIGENCE
### (RIVERSIDE, SALINARDI)

64. Riverside and Salinardi's acts, as described above, created an unreasonable risk of causing Norton harm and did cause Norton harm.

65. Considering the extreme nature of Defendants' acts, it was foreseeable that Defendants' acts would cause Norton emotional distress.

66. Norton's distress was severe and did result in physical and psychological symptoms such as burning of the eyes and face, and red blotches that remain on her face, and difficulty sleeping, fear, apprehension and anxiety.

67. Riverside and Salinardi are liable to Norton for Damages.

### F. NEGLIGENCE
### (JD 1, JD 2, JD 3, JD 4)

68. The acts of JD 1, JD 2, JD 3 and JD 4, as described above, created an unreasonable risk of causing Norton harm and did cause Norton harm.

69. Considering the extreme nature of Defendants' acts, it was foreseeable that Defendants' acts would cause Norton emotional distress.

70. Norton's distress was severe and did result in physical and psychological symptoms such as burning of the eyes and face, and red blotches that remain on her face, and difficulty sleeping, fear, apprehension and anxiety.

71. JD 1, JD 2, JD 3 and JD 4 are liable to Norton for Damages.

### G. CONNECTICUT RETAIL INSTALLMENT SALES FINANCE ACT
### (RIVERSIDE)

72. By attempting to repossess the Vehicle in a manner in which its authorized agents breached the peace, and by attempting to repossess when there was no right to do so, Riverside violated RISFA § 36a-785.

73. For its RISFA violations, Riverside is liable to Plaintiff for her damages.

### H. UNIFORM COMMERCIAL CODE
### (RIVERSIDE)

74. By attempting to repossess the Vehicle in a manner in which its authorized agents breached the peace, and by attempting to repossess when there was no right to do so, Riverside violated the UCC § 42a-9-609.

75. For its UCC violations, Riverside is liable to Plaintiff for her damages.

### I. CONNECTICUT UNFAIR TRADE PRACTICES ACT
### (RIVERSIDE, SALINARDI)

76. By falsely stating to Norton that the April 13, 2015 payment was the final payment and that she had paid for the service contract in full, and then attempting to repossess the Vehicle without a security interest, Riverside and Salinardi violated CUTPA.

77. Riverside and Salinardi further violated CUTPA when Riverside's agents attempted to repossess Norton's vehicle in a harassing and abusive manner that breached the peace.

78. Riverside and Salinardi further violated CUTPA by failing to respond to Norton's inquiries requesting an itemization showing how the loan balance was calculated and requesting the amount of repossession fees.

79. Riverside and Salinardi further violated CUTPA by refusing to sell her the Vehicle without the service contract, which she did not need, and could not afford.

80. As a result of the aforementioned violations of CUTPA, Norton suffered ascertainable losses including, but not limited to, the cost of the service contract, medical expenses, and loss of use of the vehicle during the period prior to the repossession due to her inability to park the vehicle in the usual space for fear that Riverside would again improperly take possession.

81. For their violations of CUTPA, Riverside and Salinardi are liable to Plaintiff for her actual damages, punitive damages, and attorney's fees and costs.

**SECOND REPOSSESSION**

### A. FAIR DEBT COLLECTION PRACTICES ACT (JD 5)

82. JD 5's conduct, as described above, violated the FDCPA § 1692f(6), in that JD 5 or its agent breached the peace in repossessing the Vehicle.

83. JD 5 is liable to Norton pursuant to the FDCPA for actual damages plus additional damages of up to $1,000.

### B. CONNECTICUT UNFAIR TRADE PRACTICES ACT (JD 5)

84. The conduct of JD 5, as described above, was unfair and deceptive and in violation of CUTPA.

85. As a result of JD 5's conduct, Norton suffered ascertainable losses including, but not limited to, loss of use of her Vehicle.

86. For its violation of CUTPA, JD 5 is liable to Plaintiff for her actual damages, punitive damages, and attorney's fees and costs.

### C.  CONNECTICUT CREDITORS COLLECTION PRACTICES ACT (RIVERSIDE)

87. Through its actions, as described above, Riverside violated the CCPA and the regulations promulgated thereunder as follows:

   a. Riverside failed or refused to provide Norton with a breakdown of the amount of the debt claimed by Riverside and refused to disclose the repossession expenses even after Norton requested a breakdown.

   b. Riverside repossessed the Vehicle in an abusive, harassing and deceptive manner, which breached the peace.

   c. Riverside committed an improper retention of collateral when it held the Vehicle after the repossession when it had no security interest.

88. For Riverside's violations of the CCPA, Norton seeks her actual damages, statutory damages, and attorney's fees and costs pursuant to Conn. Gen. Stat. § 36a-648

89. Plaintiff has suffered actual damages, including severe emotional distress.

90. For Riverside's violations of the CCPA, Norton seeks her actual damages, statutory damages, and attorney's fees and costs pursuant to Conn. Gen. Stat. § 36a-648.

### D.  CONNECTICUT RETAIL INSTALLMENT SALES FINANCE ACT (RIVERSIDE)

91. By repossessing the Vehicle in a manner in which its authorized agents breached the peace, Riverside violated RISFA § 36a-785.

92. For its RISFA violations, Riverside is liable to Plaintiff for her damages.

### E. UNIFORM COMMERCIAL CODE
### (RIVERSIDE)

93. By repossessing the Vehicle in a manner in which its authorized agents breached the peace, Riverside violated the UCC § 42a-9-609.

94. For its UCC violations, Riverside is liable to Plaintiff for her damages.

### F. CONNECTICUT UNFAIR TRADE PRACTICES ACT
### (RIVERSIDE, SALINARDI)

95. Through its actions, as described above, Riverside and Salinardi violated CUTPA as follows:

    a. Riverside and Salinardi violated CUTPA when it repossessed Norton's vehicle in a harassing and abusive manner that breached the peace.

    b. Riverside and Salinardi further violated CUTPA by failing to respond to Norton's inquiries requesting an itemization showing how the loan balance was calculated and requesting the amount of repossession fees.

    c. Riverside further violated CUTPA when it repossessed Plaintiff's Vehicle without having a security interest in the Vehicle.

    d. Riverside further violated CUTPA when it continued to retain the Vehicle after repossession of the Vehicle.

96. As a result of the aforementioned violations of CUTPA, Norton suffered ascertainable losses including loss of use of the Vehicle and loss of employment due to an inability to get to work.

97. For their violations of CUTPA, Riverside and Salinardi are liable to Plaintiff for her actual damages, punitive damages and attorney's fee and costs.

WHEREFORE, Plaintiff claims actual damages and common law punitive damages for the civil theft and conversion claims; emotional distress damages; Actual damages and statutory damages and attorney's fees pursuant to 15 U.S.C. 1692k; Actual damages and punitive damages pursuant to Conn. Gen. Stat § 42-110g(a); attorney's fees pursuant to Conn. Gen. Stat. § 42-110g(d); statutory damages pursuant to C.G.S. §42a-9-625; statutory damages pursuant to Conn. Gen. Stat § 36a-785(c); statutory damages pursuant to Conn. Gen. Stat § 36a-786; actual damages, statutory damages and attorney fees and costs pursuant to Conn. Gen. Stat § 36a-648.  Plaintiff also seeks an order returning the Vehicle, and such other further relief to which Plaintiff is, at law, or in equity and by statute, entitled to against the defendants.

        PLAINTIFF, DIANA NORTON

By: /s/ *Daniel S. Blinn*
    Daniel S. Blinn, ct02188
    dblinn@consumerlawgroup.com
    Consumer Law Group, LLC
    35 Cold Spring Road
    Suite 512
    Rocky Hill, CT  06067
    Tel. (860) 571-0408
    Fax. (860) 571-7457